# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

PHILLIP STEVEN BORDEN, )
                                                                    )
          Petitioner, )
                                                                    )
v.                                                                 )     Case No. 16-CV-0024-CVE-JFJ

JASON BRYANT, Warden, )
          Respondent. )

## OPINION AND ORDER

Now before the Court is petitioner's amended 28 U.S.C. § 2254 habeas corpus petition (Dkt. # 14). For the reasons below, the petition will be denied.

### I.

This cases arises from petitioner's convictions for rape and molestation. Petitioner encountered the victims - two young girls identified as De. and Da. - while dating their mother in 2000. See Dkt. # 19-3 at 26. After the relationship ended, De. and Da. continued to visit petitioner's home. Id. De. testified that petitioner began sexually abusing her when she was six years old. Id. at 28. The abuse included inappropriate touching and oral and anal sodomy. Id. at 28-66. Da. also testified that petitioner sexually assault her when she was nine or ten years old. Id. at 95-100. The victims could not provide exact dates for the incidents, but described them in relation to the three houses that petitioner occupied during an eight year period. Id. at 28-100.

The Tulsa Police Department initiated an investigation in January 2011. Petitioner was in Mexico when he learned about the allegations and the warrant for his arrest. See Dkt. # 19-4 at 74. He did not return on March 2, 2011, as scheduled. Id. at 140. Instead, his girlfriend joined him in

Mexico so that they could get married. Id. at 87-89. Over a year later, petitioner was arrested and extradited to the United States. See Dkt. # 19-7 at 51. He was initially charged with rape by instrumentation and lewd molestation. See Dkt. # 19-7 at 29. De. and Da. testified at the preliminary hearing held June 22, 2012. See Dkt. # 19-1. Thereafter, the State amended the Information as follows: (Count 1): rape by instrumentation in violation of OKLA. STAT. tit. 21, § 1114(A)(6); (Counts 2 - 4; 10-12; 14-15): lewd acts/molestation in violation of OKLA. STAT. tit. 21, § 1123; (Counts 8 - 9): first degree rape of a victim under age 14 in violation of OKLA. STAT. tit. 21, § 1115; and (Count 13): forcible oral sodomy of a victim under age 16 in violation of OKLA. STAT. tit. 21, § 888.[1] See Dkt. # 18-11 at 1-3.

The state court held a jury trial in 2013. Witnesses included petitioner; De.; Da.; and Bucky King, petitioner's former friend and business associate. The jury convicted petitioner of all charges except for Counts 2, 10, and 15 (citing specific instances of lewd acts and/or molestation) and recommended a punishment of life imprisonment plus 120 years. See Dkt. # 19-5 at 65-67. The state court sentenced petitioner in accordance with the jury's recommendation. See Dkt. 19-6 at 8. Petitioner perfected a direct appeal with the Oklahoma Court of Criminal Appeals (OCCA), asserting numerous propositions of error. See Dkt. # 18-1. On October 16, 2014, the OCCA affirmed. See Dkt. # 18-3. Petitioner then filed a motion for a new trial in state court, which was denied. See Dkt. # 18-5, 18-8.

Petitioner filed a federal § 2254 petition (Dkt. # 1) on January 14, 2016. He originally raised nine propositions of error. Id. at 3. However, by an Opinion and Order entered April 21, 2016 (Dkt.

---

[1] The amended information (Dkt. 18-11) reflects that Counts 5, 6, and 7 were dismissed.

# 13), the Court determined he failed to exhaust three of his nine claims. Petitioner, therefore, amended his petition to seek relief on the following claims:

(Ground 1): Interference by the prosecutor prevented three defense witnesses from testifying;

(Ground 2): Petitioner lacked sufficient notice of the alleged illegal conduct;

(Ground 3): New evidence demonstrates that witness Bucky King lied under oath;

(Ground 4): The prosecutor committed misconduct; and

(Ground 5): Ineffective assistance of counsel.

See Dkt. # 14 at 5-6.

Respondent filed a response (Dkt. # 18), along with copies of the state court record (Dkt. # 19). Respondent concedes, and the Court finds, that petitioner timely filed his federal habeas petition and exhausted state remedies as to the above claims. See Dkt. # 18 at 2l; see also 28 U.S.C. §§ 2244(d), 2254(b)(1)(A). Petitioner filed a reply (Dkt. # 22) on August 8, 2016, and the matter is ready for review.

**II.**

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs this Court's review of petitioner's habeas claims. See 28 U.S.C. § 2254. Relief is only available under the AEDPA where the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). However, because the OCCA already adjudicated petitioner's claims, this Court may not grant habeas relief unless he demonstrates that the OCCA's ruling: (1) "resulted in a decision that was contrary to . . . clearly established Federal law as determined by Supreme

3

Court of the United States," 28 U.S.C. § 2254(d)(1);[2] (2) "resulted in a decision that . . . involved an unreasonable application of clearly established Federal law," id.; or (3) "resulted in a decision that was based on an unreasonable determination of the facts" in light of the record presented to the state court, id. at § 2254(d)(2).

"To determine whether a particular decision is 'contrary to' then-established law, a federal court must consider whether the decision 'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court." Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (alterations in original) (quotations omitted). When the state court's decision "identifies the correct governing legal principle in existence at the time, a federal court must assess whether the decision 'unreasonably applies that principle to the facts of the prisoner's case." Id. (quotations omitted). Significantly, an "unreasonable application of" clearly established federal law under § 2254(d)(1) "must be objectively unreasonable, not merely wrong." White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (quotations omitted). "[E]ven clear error will not suffice." Id. Likewise, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010). The Court must presume the correctness of the state court's factual findings unless petitioner rebuts that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

---

[2] As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated in "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Lockyer v. Andrade, 538 U.S. 63, 71–72 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)); see also House v. Hatch, 527 F.3d 1010, 1015 (10th Cir. 2008) (explaining that "Supreme Court holdings—the exclusive touchstone for clearly established federal law—must be construed narrowly and consist only of something akin to on-point holdings").

Essentially, the standards set forth in § 2254 are designed to be "difficult to meet," Harrington v. Richter, 562 U.S. 86, 102 (2011), and require federal habeas courts to give state court decisions the "benefit of the doubt." Woodford v. Visciotti, 537 U.S. 19, 24 (2002). A state prisoner ultimately "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

**A. An Evidentiary Hearing is Not Warranted**

As an initial matter, petitioner asks the Court to conduct on evidentiary hearing before ruling on Ground 1 (witness interference) and Ground 3 (false testimony by Bucky King). See Dkt. # 22 at 12. Because the state court record precludes habeas relief, petitioner's request is denied. See Cullen v. Pinholster, 563 U.S. 170, 183 (2011) ("[W]hen the state-court record precludes habeas relief under the limitations of § 2254(d), a district court is not required to hold an evidentiary hearing.") (quotations omitted).

**B. Witness Interference (Ground 1)**

Petitioner first argues that the prosecutor interfered with the following trial witnesses and prevented them from testifying for the defense. See Dkt. # 14 at 33.

    A. Brittany Simpson

Brittany Simpson was allegedly going to testify that she had a turbulent relationship with the victims' mother, and that the victims were rarely or never at petitioner's house between 2007 and 2009. See Dkt. # 18-5 at 12. Petitioner contends that an agent for the prosecutor served a "so-called subpoena" during trial, picked Simpson up at her residence, and detained her for the "entirety of a

day." Dkt. # 14 at 34. Simpson was approximately seven months pregnant at the time. Id. Thereafter, she declined to testify.

The state court considered and rejected these arguments in connection with petitioner's motion for a new trial. See Dkt. # 18-8. Specifically, the state court found that the prosecutor's evidence refuted petitioner's version of events, and that petitioner's own evidence reflected that Simpson began avoiding defense counsel's calls before the trial began. Id. at 1-2. The state court further found that any character testimony about the victims' mother would not have been allowed because the mother did not testify, and that other witnesses, including petitioner, testified about the frequency of the victims' visits to his house. Id. at 1-2. Petitioner filed a motion to reconsider, which attached new affidavits not included with the original motion. See Dkt. # 18-9. Simpson did not provide a statement; the affidavits were executed by people who purportedly spoke to Simpson and/or her family members. Id. at 4-6. The affidavits stated Simpson felt "scared" after the prosecution questioned her. Id. The state court summarily declined to reconsider, and the OCCA affirmed. See Dkt. # 18-10; see also Dkt. # 18-3 at 8.

B. Rebecca and Bryce Davis

Petitioner further contends that Rebecca Davis and her son, Bryce Davis, were expected to testify about the character of the victims' mother, and that Da. falsely accused Bryce Davis of molesting her. See Dkt. # 18-5 at 13, 15. According to petitioner, Rebecca and Bryce Davis left the courthouse without testifying after the prosecutor threatened to arrest Rebecca Davis for her outstanding warrants.

6

The state court also rejected this claim, holding:

> There is no assertion that the prosecutor ever talked to or even saw Ms. Davis. As all counsel in this case know, a warrant is an existing judicial order. The prosecution does not arrest anyone and have [sic] nothing to do with the issuance of a warrant. The court had reserved the ruling on the admissibility of a purported false claim . . . of sexual molestation by her son, Bryce Davis. The court was to receive evidence outside the presence of the jury to determine whether there was sufficient evidence that the claim was false. On the first day the hearing was scheduled, neither Rebecca or [sic] Bryce Davis appeared. It was represented to the court that Bryce Davis was ill. On the second day, Rebecca Davis only was reported to be in the courthouse and then departed. No further attempt or request was made concerning the motion by defense counsel. Bryce Davis never appeared. This failure to appear could not have been related to anything concerning his mother's warrant.

Dkt. # 18-8 at 2. The OCCA affirmed the decision. See Dkt. # 18-3 at 8.

### C. Petitioner Has Not Demonstrated Clear Error in Connection with the State Court Ruling

"[C]riminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt." Pennsylvania v. Ritchie, 480 U.S. 39, 56 (1987). "The necessary ingredients of the Fourteenth Amendment [also] guarantee that no one shall be deprived of liberty without due process of law including a right to be heard and to offer testimony[.]" Rock v. Arkansas, 483 U.S. 44, 51 (1987). Accordingly, "the government cannot substantially interfere with a defense witness's decision to testify." United States v. Serrano, 406 F.3d 1208, 1215 (10th Cir. 2005). This includes "lengthy and intimidating warning[s]" and "threatening remarks," which effectively cause the witness not to testify for the defense. Webb v. Texas, 409 U.S. 95, 97-98 (1972) (per curiam). Witness inference must be determined on a case-by-case basis. Serrano, 406 F.3d at 1216. "The dispositive question in each case is whether the government actor's interference with a witness's decision to testify was 'substantial.'" Id. (quotations omitted). "Interference is

7

substantial when the government actor actively discourages a witness from testifying through threats of prosecution, intimidation, or coercive badgering." Id.

After reviewing the record, the Court is not convinced that the state court erred. The only direct evidence regarding the state's contact with Brittany Simpson is an affidavit by investigator Jeff Felton, who picked her up on the day in question. The affidavit reflects that during the trial, Felton attempted to serve a subpoena on Simpson at her home; Simpson called Felton and agreed to meet him at a gas station to avoid parking downtown; during the car ride, Simpson told Felton she did not know anything or want to be involved in the case; a prosecutor questioned Simpson for about two hours; and Felton gave her a ride home. See Dkt. # 18-7 at 18-19. The state court accepted the facts without conducting a hearing after petitioner submitted a three-sentence response affidavit, which concedes that Simpson began avoiding defense counsel before Felton served the subpoena. See Dkt. # 18-5 at 19. Petitioner has not pointed to any clear and convincing evidence to overcome the state court's findings. He simply sought reconsideration in state court based on affidavit testimony by people who knew Simpson, and he lists Simpson as a witness in the instant proceeding.[3] On this record, the state court reasonably concluded that the prosecutor did not interfere with Brittany Simpson.

The record also supports the state court's ruling that the prosecutor did not interfere with the decision not to testify by Rebecca or Bryce Davis. Bryce Davis initially failed to appear because he

---

[3] Petitioner has not explained why he waited until after the state court denied his motion for a new trial to produce these additional affidavits, or why he believes Simpson would testify favorably in support of his habeas petition. The motion to reconsider includes a vague allegation that petitioner had trouble contacting Simpson when he filed the original motion for a new trial. See Dkt. # 18-9 at 1-2. However, as previously noted, Simpson has never submitted an affidavit, and the record contains no direct evidence that she endorses petitioner's version of events.

was ill, and defense counsel stated that he "d[id] not believe [Rebecca] w[ould] testify." See Dkt. # 19-3 at 235; 240. There is no evidence that the prosecutor spoke to either witness. An affidavit by petitioner's wife (Shannon Trammell) reflects that she and Rebecca Davis were waiting in the hall outside the courtroom when defense counsel conveyed the message about the warrant and the attendant risk of arrest. See Dkt. # 18-5 at 20. It appears that Bryce Davis was not at the courthouse. Id. Trammell immediately went to the Cost Administrator desk, paid the outstanding fines on Rebecca Davis' behalf, and handed Rebecca Davis the receipt. Id. Although Rebecca Davis left after the incident, it is unclear what threat, if any, she would have perceived once the warrant was cleared, or how the (resolved) warrant impacted Bryce Davis' decision whether to testify after he recovered from his illness. See Byrd v. Workman, 645 F.3d 1159, 1168 (10th Cir. 2011) ("[M]ere speculation is not sufficient" to satisfy a petitioner's burden on habeas corpus review). Therefore, the state court ruling does not constitute an unreasonable application of the facts or federal law, and Ground 1 fails.

**C. Insufficient Notice of the Charges (Ground 2)**

Petitioner next argues that his due process rights were violated because he was unable to prepare a defense to the multiple charges in the Information. See Dkt. # 14 at 39. He claims that the accusations made by De. and Da. spanned nearly ten years and did not includes dates or times. As a result, petitioner was unable to present an alibi defense.

The OCCA rejected this claim on direct appeal, holding:

Each count in the Information described various sexual acts and crimes against each victim with specificity, alleged to have taken place over a period of eight years. The testimony at [the] preliminary hearing was that different specific acts against De. . . . had taken place successively in three houses [petitioner] lived in, narrowing the time frame; Da. . . . testified that the assault on her happened in the third house. Taken as a whole, the record shows the

9

>       allegations in the Information, taken with the information available to [petitioner] from the
>       preliminary hearing and discovery, were sufficiently specific to apprise [petitioner] of the
>       charges he faced.

Dkt. # 18-3 at 5-6.

Under the Sixth and Fourteenth Amendments, a defendant must be informed of the nature of the charges so that he can mount a defense. See Cole v. State of Ark., 333 U.S. 196, 201 (1948); see also In re Oliver, 333 U.S. 257, 273 (1948) ("A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense-a right to his day in court-are basic in our system of jurisprudence"). In evaluating fair notice, courts may consider the "Information along with the material available at the preliminary hearing and through discovery . . . ." Sallahdin v. Gibson, 275 F.3d 1211, 1227 (10th Cir. 2002). At a minimum, the state must set forth the elements of the charged offense, inform the defendant of the charges against which he must defend, and provide enough information to bar future prosecutions for the same offense. See Hamling v. United States, 418 U.S. 87, 117 (1974).

Considering the Information along with the victims' testimony at the preliminary hearing, the Court agrees that petitioner received sufficient notice of the charges. The Information provides the time frame of each type of sexual abuse, which count relates to which victim, and the elements of each offense. See Dkt. # 19-7 at 29-30; see also Dkt. # 18-11. Although De. and Da. could not provide specific dates and times at the preliminary hearing, they described the sexual contact in detail, including where the incidences occurred. See Dkt. # 19-1. On this record, the Court cannot find that the OCCA misapplied the facts or law. Habeas relief is unavailable as to Ground 2.

**D. New Evidence of Perjury (Ground 3)**

In Ground 3, petitioner contends that the prosecutor presented false testimony by Bucky King. King testified that, at a party, petitioner stated "I didn't touch her" as petitioner walked out of a room where a young girl was curled up in the fetal position. See Dkt. # 14 at 44. King further testified that he (King) directed the girl to go find her father, Jim Dobbs.[4] Id. According to petitioner, new evidence shows that Dobbs searched for his niece throughout the entire house; King would not let him into a particular room; and Dobbs, therefore, concluded that she must have been in the room with King. Id.; see also Dkt. # 18-5 at 8. Dobbs also believed that King was pleased with petitioner's conviction because King owed petitioner money. See Dkt. # 18-5 at 8-9.

Petitioner presented this claim to the state court in connection with his motion for a new trial. The state court rejected the argument because the alleged new facts were easily discoverable and immaterial. See Dkt. # 18-8 at 1. The OCCA affirmed, observing that the evidence does not prove King committed perjury. See Dkt. # 18-3 at 5. The OCCA noted that at most, "the evidence discredits King's testimony, which was offered to corroborate the State's direct evidence in the case." Id.

A prosecutor violates the due process clause by knowingly presenting false evidence, or "allowing it to go uncorrected when it appears." Napue v. Illinois, 360 U.S. 264, 269 (1959). To prevail on a false evidence claim, a petitioner must show "(1) [the] testimony was in fact false, (2) the prosecution knew it to be false, and (3) the testimony was material." United States v. Caballero, 277 F.3d 1235, 1243 (10th Cir. 2002). None of these elements is met. King could have been in the room with the girl after he observed petitioner emerge, such that King and Dobbs were both telling

---

[4] It appears that Dobbs is actually the girl's uncle. See Dkt. # 18-5 at 8.

the truth. There is also no evidence that the state knew about any false testimony. As respondent points out, Dobbs sat through the entire trial, including King's testimony, but waited to disagree with King until petitioner filed the motion for a new trial. Petitioner has, therefore, failed to establish the OCCA erred as to Ground 3.

**E. Prosecutorial Misconduct (Ground 4)**

In Ground 4, petitioner alleges the prosecutor tainted the trial by making a number of inappropriate comments. See Dkt. # 14 at 47-8. The challenged questions and comments by the prosecutor are listed, in context, below.

(i) Petitioner accused De. of lying because he would not give her a car he originally purchased for her. See Dkt. # 19-4 at 106. The prosecutor then asked petitioner whether he had paperwork to verify the purchase and what he did with the car after he refused to give it to De. Id.

(ii) Petitioner testified that Bucky King, a business associate of petitioner and state witness, "wanted to pay $100,000 for $270,000 worth of properties." Dkt. # 19-4 at 127. The prosecutor then asked petitioner: "Now, it's interesting that you say that because you haven't provided anything here for the . . . jury to see where there's an interest rate in any kind of contract, have you?" Id.

(iii) On cross examination, the prosecutor asked petitioner whether he ever told police about his refusal to give De. a car or laptop, which allegedly motivated her to fabricate the allegations. See Dkt. # 19-4 at 112. Petitioner stated he did not tell police, but that he "absolutely" wanted to talk to them. Id. The prosecutor then repeatedly asked petitioner why he did not contact police from Mexico and/or the Tulsa County Jail after he was arrested. Id. at 112-16.

(iv) In closing argument, the prosecutor stated that petitioner has a right to call witnesses, and that he could have called Mi. (the girl found in the fetal position at the party) to contradict Bucky

King's suggestion that petitioner assaulted her. See Dkt. # 19-5 at 56. The prosecutor also referenced King's testimony that when petitioner learned of the charges, petitioner told King that the accuser could have been "any of six girls." Id. The prosecutor argued that petitioner could have located the "six girls" and called them to testify in his defense. Id.

(v) In closing argument, defense counsel called Bucky King a coward for not visiting petitioner (a former friend) in jail. See Dkt. # 19-5 at 45. The prosecutor then described petitioner's behavior on four occasions and asked: "Who's the coward?" Id. at 51, 55, and 59. On two occasions, the prosecutor answered her own question by stating: "There's the coward." Id. at 51, 56.

The OCCA considered these comments and denied relief. See Dkt. # 18-3. The OCCA found that the prosecutor did not shift the burden of proof by referencing petitioner's failure to present evidence and witnesses. Id. at 6. The jurors were properly instructed on the burden of proof, and the OCCA presumed they followed the instructions. Id. The OCCA further found that a prosecutor may generally comment on a defendant's right to present witnesses or testimony, and that most of the prosecutor's statements (including the coward remarks) were invited by defense counsel. Id. at 6-7. Finally, the OCCA determined that "the prosecutor's references in cross-examination to [petitioner's] post-arrest silence, while error, were harmless." Id. at 6. "Consistent, convincing evidence from each victim, supported by corroborating evidence, supports [petitioner]'s convictions." Id. at 7.

After reviewing the record, the Court agrees. "[I]nappropriate prosecutorial comments, standing alone," are not sufficient to vacate "a criminal conviction obtained in an otherwise fair proceeding.'" Matthews v. Workman, 577 F.3d 1175, 1186 (10th Cir. 2009) (quoting United States v. Young, 470 U.S. 1, 11 (1985)). "The errant remarks must have so infected the trial with

13

unfairness as to make the resulting conviction a denial of due process." Cuesta-Rodriguez v. Carpenter, 916 F.3d 885 (10th Cir. 2019) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). To determine whether the challenged remarks deprived the petitioner of a fair trial, courts must consider "all the surrounding circumstances, including the strength of the state's case," Hamilton v. Mullin, 436 F.3d 1181, 1187 (10th Cir. 2006), and whether the comments were invited by the defense. See Darden v. Wainwright, 477 U.S. 168, 182 (1986). A petitioner can also demonstrate the prosecutor's comments so prejudiced "a specific right, such as the privilege against compulsory self-incrimination, as to amount to a denial of that right." Matthews v. Workman, 577 F.3d 1175, 1186 (10th Cir. 2009) (quotations omitted). In such a case, the comments must have had a "substantial and injurious effect" on the jury's verdict. Id.

Petitioner has not demonstrated that the challenged remarks deprived him of a fair trial or substantially tainted the jury's verdict. It is well established that prosecutors may comment on the lack of evidence supporting the defendant's theories, including "defendant's failure to call certain witnesses or present certain testimony." Battenfield v. Gibson, 236 F.3d 1215, 1225 (10th Cir. 2001); see also United States v. Simpson, 7 F.3d 186, 190 (10th Cir.1993). The prosecutor, therefore, did not shift the burden of proof by referencing any purchase receipts (subparagraph (i)); contracts (subparagraph (ii)); or petitioner's failure to call Mi. and other alleged victims (subparagraph (iv)). The "coward" remarks (subparagraph (v)) also do not warrant relief. "While prosecutors should refrain from name-calling," the remarks were invited and "not so egregious as to inflame the passions of the jury." Hanson v. Sherrod, 797 F.3d 810, 840 (10th Cir. 2015).

The Court further agrees that the questions about petitioner's post-arrest silence did not materially prejudice his right to remain silent or otherwise taint the trial. The questions primarily

focused on why petitioner failed to mention De.'s alleged motives before trial, and whether he was prevented from contacting police from jail. See Dkt. # 19-4 at 72-73. The exchange was fairly innocuous in comparison to other testimony. Both victims described the sexual abuse in graphic detail. See Dkt. # 19-3 at 22-116. Bucky King testified that when De. walked by petitioner at age 13 or 14, petitioner leaned over and said "I f\*\*ked that ass." Id. at 206. Petitioner disappeared to Mexico for a year after the charges were filed, and he had to be extradited back to the United States. See Dkt. # 19-4 at 74; see also Dkt. # 19-7 at 51. On this record, the Court cannot find that the prosecutor's remarks colored the verdict or otherwise violated any constitutional right. The OCCA reasonably applied the facts and federal law, and Ground 4 fails.

## F. Ineffective Assistance of Counsel (Ground 5)

Petitioner finally argues that trial counsel was ineffective for failing to object to the above remarks by the prosecution. See Dkt. # 14 at 52. Consequently, the OCCA reviewed the remarks only for plain error. Id. The OCCA rejected this claim under the two-prong test announced in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. 466 U.S. at 687. To satisfy the second prong, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Hobdy v. Raemisch, 916 F.3d 863 (10th Cir. 2019) (quotations omitted). The OCCA concluded petitioner "fail[ed] to show prejudice" because "there was no error in [the prosecutor's] argument" and any "improper cross-examination of [petitioner] was harmless and required no relief." Dkt. # 18-3 at 8.

As discussed above, petitioner has not demonstrated that an objection by defense counsel would have changed the outcome at trial or on appeal. Most of the challenged remarks were appropriate, and even the inappropriate remarks were fairly benign. Therefore, the OCCA reasonably applied Strickland when it rejected petitioner's claim for ineffective assistance of counsel. Habeas relief is unavailable as to Ground 5, and the amended petition (Dkt. # 1) must be denied.

**III.**

Habeas Corpus Rule 11 requires "[t]he district court [to] . . . issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate may only issue "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court rejects the merits of petitioner's constitutional claims, he must make this showing by "demonstrat[ing] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). For the reasons discussed above, petitioner has not made the requisite showing on any of his claims. The Court therefore denies a certificate of appealability.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The amended petition for a writ of habeas corpus (Dkt. # 14) is **denied.**

3. A certificate of appealability is **denied**.

4. A separate judgment will be entered herewith.

**DATED** this 19th day of March, 2019.

_Claire V Eagan_
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE